# United States Court of Appeals for the Federal Circuit

---

GABRIEL G. RODRIGUEZ, AS ADMINISTRATOR OF THE
ESTATE OF
GIAVANNA MARIA RODRIGUEZ FOR THE BENEFIT
OF
GABRIEL GENE RODRIGUEZ AND JENNIFER ANN
RODRIGUEZ,
*Petitioners-Appellants,*

v.

SECRETARY OF HEALTH AND HUMAN
SERVICES,
*Respondent-Appellee.*

---

2010-5093

---

Appeal from the United States Court of Federal Claims in Case No. 06-VV-559, Judge Margaret M. Sweeney.

---

Decided: February 9, 2011

---

GILBERT GAYNOR, Law Office of Gilbert Gaynor, of Santa Barbara, California, argued for petitioners-appellants. With him on the brief was JOHN FRANCIS MCHUGH, Attorney at Law, of New York, New York.

DARRYL R. WISHARD, Trial Attorney, Torts Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent-appellee. With him on the brief were TONY WEST, Assistant Attorney General, TIMOTHY P. GARREN, Director, MARK W. ROGERS, Deputy Director, CATHARINE E. REEVES, Assistant Director.

SHELIA A. BJORKLUND, Lommen, Abdo, Cole, King & Stageberg, P.A., of Minneapolis, Minnesota for amicus curiae Bar Association.

———————————

Before RADER, *Chief Judge*, LOURIE, *Circuit Judge*, and WHYTE, *District Judge*.[*]

WHYTE, *District Judge*.

This case involves a dispute over the reasonable hourly rate used to calculate attorneys' fees awarded under the National Childhood Vaccine Injury Act of 1986, 42 U.S.C. §§ 300aa-1 to -43 ("Vaccine Act"), as amended. Petitioner Gabriel Rodriguez appeals from a decision of the United States Court of Federal Claims, which affirmed the decision by a special master awarding fees based on evidence of the reasonable hourly rates of Vaccine Act practitioners in the forum, rather than accepting the Laffey Matrix as prima facie evidence of the forum rate. This appeal followed. We affirm.

———————————

[*] The Honorable Ronald M. Whyte, United States District Court for the Northern District of California, sitting by designation.

BACKGROUND

On July 31, 2006, Gabriel Rodriguez filed a petition for compensation under the Vaccine Act alleging that his infant daughter Giavanna Rodriguez had suffered from encephalopathy and died as result of receiving a vaccination. The special master conducted an entitlement hearing and ordered respondent Secretary of Health and Human Services to show cause why she should not find that Giavanna suffered from an encephalopathy table injury claim entitling her estate to compensation. *See Walther v. Sec'y of Health & Human Servs.*, 485 F.3d 1146, 1149 (Fed. Cir. 2007) (describing table injury claims). As a result, the parties negotiated a settlement that was memorialized on November 27, 2007.

On February 28, 2008, petitioner filed an initial application for an award of attorneys' fees and costs pursuant to 42 U.S.C. § 300aa-15(e)(1), requesting, among other things, $65,925 in fees for his attorney, John McHugh, a solo practitioner in New York City. Petitioner initially requested that McHugh be compensated at an hourly rate of $450 but later amended his request to increase McHugh's hourly rate to $598 for work performed in May 2006, $614 for work performed between June 2006 and May 2007, and $645 for work performed after May 2007—increasing the total requested to $94,642.

The special master directed the parties to file "additional evidence focused on the negotiated hourly rates for attorneys of Mr. McHugh's skill, experience, and reputation; fees paid to attorneys in the Washington, DC area; and argument to assist in determining the relevant legal community for purposes to determining the forum rate for attorneys' fees." After the parties responded to the special master's order, petitioner filed a supplemental fee application, requesting $10,395 in fees incurred for ser-

vices of Gilbert Gaynor, a California attorney retained by McHugh to respond to the special master's July 17, 2008 order, at an hourly rate of $450 for 2008 and $475 for 2009.

The special master rejected petitioner's claim that the District of Columbia Laffey Matrix, a schedule of rates maintained by the Department of Justice to compensate attorneys prevailing in "complex federal litigation," sets a prima facie forum rate schedule for Vaccine Act attorneys' fees. *Laffey v. Nw. Airlines, Inc.*, 572 F. Supp. 354 (D.D.C. 1983), *aff'd in part, rev'd in part on other grounds*, 746 F.2d 4 (D.C. Cir. 1984), *overruled by Save Our Cumberland Mountains, Inc. v. Hodel*, 857 F.2d 1516 (D.C. Cir. 1988) ("We do not intend, by this remand, to diminish the value of the fee schedule compiled by the District Court in *Laffey*. Indeed, we commend its use for the year to which it applies."). Instead, to determine the forum rate, the special master analyzed the following evidence: (1) information concerning the negotiated hourly rate of the one Vaccine Act attorney who provides the bulk of his services within the District of Columbia; (2) an order in another case directing respondent to show cause why petitioner's counsel, an experienced tort attorney and senior partner at a Washington, DC law firm, should not receive fees based on a $300 hourly rate for work performed between 2001 and 2003; (3) a cost of living index supplied by petitioner; (4) information about a nationwide sample of law firm billing rates supplied by petitioner, (5) the Laffey Matrix and adjusted Laffey Matrix, and (6) rates charged and received by other attorneys handling Vaccine Act cases, including those negotiated by small firms in Boston, Massachusetts and Vienna, Virginia. The special master reduced the hourly rate requested by petitioner for McHugh's services to $310 for 2006, $320 for 2007, and

$335 for 2009. She also reduced the hourly rate for Gaynor's services to $270 for 2008 and $275 for 2009.

Petitioner timely sought review in the Court of Federal Claims. On January 22, 2010, the Court of Federal Claims issued its decision affirming the decision of the special master. Petitioner timely filed a notice of appeal. We have jurisdiction pursuant to 42 U.S.C. § 300aa-12(f).

DISCUSSION

Under the Vaccine Act, this court reviews a decision of the special master under the same standard as the Court of Federal Claims and determines if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Avera v. Sec'y of HHS*, 515 F.3d 1343, 1347 (Fed. Cir. 2008). "Arbitrary and capricious" is a highly deferential standard of review: "[i]f the special master has considered the relevant evidence of record, drawn plausible inferences and articulated a rational basis for the decision, reversible error will be extremely difficult to demonstrate." *Hines v. Sec'y of HHS*, 940 F.2d 1518, 1528 (Fed. Cir. 1991). "Not in accordance with the law" refers to the application of the wrong legal standard, and the application of the law is reviewed *de novo. See Markovich v. Sec'y of HHS*, 477 F. 3d 1353, 1356 (Fed. Cir. 2007).

I

Under the Vaccine Act, a special master who has awarded a petitioner compensation on a vaccine-related claim "shall also award as part of such compensation an amount to cover . . . reasonable attorneys' fees." 42 U.S.C. § 300aa-15(e)(1). We have endorsed the use of the lodestar approach to determine what constitutes "reasonable

attorneys' fees" under the Vaccine Act, which requires that the court make an initial estimate of reasonable fees by "multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate," and then adjust the product upward or downward based on other specific findings. *Blum v. Stenson*, 465 U.S. 886, 888 (1984).

In *Avera v. Sec'y of HHS*, 515 F.3d 1343 (Fed. Cir. 2008), we held that attorneys' fees under the Vaccine Act should in general be determined using the forum rate for the District of Columbia in the lodestar calculation, rather than the rate in the geographic area of the practice of petitioner's attorney. *Id.* at 1349. In *Avera*, we went on to apply a limited exception to the forum rule where the bulk of the attorney's work is done outside the forum jurisdiction, and where there is a very significant difference in the compensation rate between the place where the work was done and the forum. *Id.* at 1349-1350 (*citing Davis County Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. U.S. Envtl. Prot. Agency*, 169 F. 3d 755 (D.C. Cir. 1999)). We, therefore, expressly did not reach the question of "whether the so-called Laffey Matrix should play any role in the determination of fees under the Vaccine Act in those cases where forum rates are utilized." *Id.* at 1350.

The issue presented in this appeal is whether the reasonable hourly rate for attorneys handling Vaccine Act cases in the District of Columbia should be determined by applying the Laffey Matrix, or whether the rate should be determined by considering a variety of factors, which may or may not include the Laffey Matrix.

Petitioner sought attorneys' fees based on the Laffey Matrix or Adjusted Laffey Matrix. Both the Laffey Matrix

and the Adjusted Laffey Matrix are prepared by the U.S. Attorney's Office for the District of Columbia and include a chart of hourly rates for attorneys based on the number of years in practice. Petitioner contends that the Laffey Matrix or Adjusted Laffey Matrix provided prima facie evidence of the forum rate for Vaccine Act cases, that the special master incorrectly distinguished the litigation to which the matrices have been applied from Vaccine Act litigation, and that the special master improperly distinguished the Vaccine Act from other fee-shifting statutes. He further argues that there are strong policy rationales for using the Laffey and Adjusted Laffey matrices.

In *Laffey*, the District Court for the District of Columbia approved a schedule of "the prevailing rates in the community for lawyers of comparable skill, expertise and reputation in complex federal litigation." 572 F. Supp. at 371-75. The court explained that the Title VII employment discrimination case brought on behalf of 3,300 flight attendants was "an extraordinary undertaking in many respects, consuming thirteen years and thousands of personnel hours and raising numerous issues under both [federal employment discrimination] statutes." *Id.* at 359. Plaintiffs' counsel brought the case at an early stage in the development of the law under Title VII and the Equal Pay Act, and they had to conduct extensive investigation and discovery against a large, well-financed corporate defendant with a history of vigorously litigating cases brought against it, all at a time when there were few legal precedents and the relevant legal standards were largely unsettled and uncertain. *Id.* at 378-79.

As the special master found, Vaccine Act litigation, while potentially involving complicated medical issues and requiring highly skilled counsel, is not analogous to "complex federal litigation" as described in *Laffey* so as to

justify use of the Matrix instead of considering the rates charged by skilled Vaccine Act practitioners. The Vaccine Act provides petitioners with an alternative to the traditional civil forum, applies relaxed legal standards of causation, and has eased procedural rules compared to other federal civil litigation. Vaccine Act proceedings, which involve no discovery disputes, do not apply the rules of evidence, and are tried in informal, streamlined proceedings before special masters well-versed in the issues commonly repeated in Vaccine Act cases, are different from the complex type of litigation the Laffey Matrix is designed to compensate. While some cases under the Vaccine Act may present special challenges, those difficulties are reflected and compensated in the other half of the lodestar calculation--the reasonable number of hours expended.

In addition, unlike the fee-shifting statues to which the Laffey Matrix has been applied, a party need not "prevail" under the Vaccine Act in order to receive an award of attorneys' fees. In other words, 42 U.S.C. § 300aa-15(e)(1) does not require that a claimant prevail on the merits in order to secure fees. Instead, section 300aa-15(e)(1) allows for an award as long as the claim was brought "in good faith" and with "a reasonable basis." The Supreme Court has held that enhancement of a calculated lodestar award based on contingency risk is not permitted under prevailing-party fee-shifting statutes. *City of Burlingame v. Dague*, 505 U.S. 557, 567 (1992). But the Court noted:

> [A]n enhancement for contingency would likely duplicate in substantial part factors already subsumed in the lodestar. The risk of loss in a particular case (and, therefore, the attorney's contingent risk) is the product of two factors: (1)

the legal and factual merits of the claim, and (2) the difficulty of establishing those merits. The second factor, however, is ordinarily reflected in the lodestar-either in the higher number of hours expended to overcome the difficulty, or in the higher hourly rate of the attorney skilled and experienced enough to do so. . . . Taking account of it again through lodestar enhancement amounts to double counting."

*Id.* at 562-63.

Under *Dague*, in determining a reasonable rate to be used in the lodestar calculation, it is appropriate to take account of the fact that Vaccine Act attorneys are practically assured of compensation in *every* case, regardless of whether they win or lose and of the skill with which they have presented their clients' cases. If this were not true, Vaccine Act attorneys would be more favorably compensated than attorneys who take cases under fee-shifting statutes and are only paid by the opposing side if their clients' claims are meritorious and they skillfully prosecute those claims. The attorneys' fees provisions of the Vaccine Act "were not designed as a form of economic relief to improve the financial lot of lawyers." *Id.* at 563 (quoting *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986)).

The special master did not apply an incorrect legal standard nor was her rejection of the limited evidence petitioner filed arbitrary, capricious, or an abuse of discretion. The special master considered appropriate evidence, including the Laffey Matrix, and fully explained the basis for determining the fee rates for petitioner's attorneys.

**AFFIRMED**